Good morning. I'm Stephen Neal on behalf of the Plaintiff Appellant, and I would like to save four minutes of my time for rebuttal, if I might. 350,000 times a day, customers purchase from UPS first-day and second-day air delivery service for letters and packages. For that service, they pay a premium of approximately three times the price for comparable ground delivery services. For that service, they are charged an aviation fuel surcharge amounting annually to millions and millions of dollars. After the shipments are made, they receive billing from UPS that indicates they received air service and paid for aviation fuel. Yet 350,000 times a day, those packages and letters go on UPS or other trucks, trucks powered by diesel fuel, not by aviation fuel. The district court erred in concluding that these contracts were not contracts for the provision of air services and were not contracts requiring the use of air delivery. The court erred first by rejecting the plain meaning of the words air and aviation fuel. The court secondly concluded that air, as used in the contracts, were labels. There were two problems with that holding. First of all, they're not merely labels. As exemplified, and there are many examples of it, by excerpts from the record 2469, the very contracts that are entered into are contracts that are called down either in hard copy or off a computer by the customers who choose to pick a contract for air delivery or choose to pick a contract for ground delivery, and they then proceed to fill out the contract and check within the boxes of the contract whether they want air delivery or some other kind of delivery. Even if these were labels, as the district court held, labels have to be considered as part of the whole contract, but they were not mere labels. The contractual terms that are posted by UPS are permeated with references to air delivery services in lower case. They are not labels. The court below said that what the customers of UPS are really interested in is time of delivery rather than the method of delivery, and there are two problems with that. One is if that is the case, why doesn't UPS simply say that? Why doesn't UPS simply sell a service for next-day delivery, second-day delivery, third-day delivery, which their largest competitor does? Don't they have a clear reservation or a rights clause that says they can transport it the best way they think in every situation here? I'm trying to figure out how that reservation or rights clause affects your case. So the UPS and the district court both rely heavily on the so-called shipping mode clause. The shipping mode clause argued by UPS and relied on by the district court is, I submit, a totally circular argument because what the shipping mode clause says is that UPS can use any mode of transportation it wants to provide the, quote, services selected by the customer. So the question then in interpreting the shipping mode clause is what are the services selected by the customer? And the district court said the services selected by the customer are time of delivery rather than mode of delivery. But that clause can be interpreted equally consistently with our theory that they purchased air services, in which case it means they're entitled to use their own airplanes or chartered airplanes or United Airlines to move the packages. So he is using a circular reasoning to define shipping mode, and you need to know what the shipping mode is before you turn to that clause. So let's just step back a little bit. I just want to understand the nature of the claim. If someone wants to ship something from Glendale, California, here, to Los Angeles, that would be sent by air? You're saying that if they did that, they would expect that it be done by air, even though it's probably 17 miles away, and the quicker way would be to take it in a truck? I'm trying to understand your claim here. Okay, so two comments in response to that. The answer is if you look at page 8 of the UPS brief, UPS describes an elaborate system of hubs and spokes and centers, sorting centers, throughout the United States, and that is the way UPS and all of these shippers like FedEx operate. So there's nothing in the record to show this, but if you ship a package from San Francisco to Monterey, California, by FedEx, it may very well go through Memphis, Tennessee. So there's nothing that would put a shipper on notice as to how their package is going. So they would reasonably believe that it would go to Memphis and then here? I'm just trying to ---- To a sorting center, it's reasonable to believe it would go to a sorting center in Las Vegas or a sorting center in Portland, Oregon or a sorting center anywhere in the country and then shipped back. And, Your Honor, one of the most, I think, important and telling exhibits in the record goes to this question because it is an excerpt of the record 2947, and at 2980 of the record, this exhibit is identified as pertaining to shipments between Los Angeles and San Francisco. And it is a document that is repeated over and over and over in the UPS terms and conditions. And if you look at the last two entries, it goes to exactly Your Honor's question because if you look at the last two entries on the services that they are holding out, the next to last entry is UPS second day air, and the last entry on the page is UPS ground. And on their own terms and conditions for this package, you have the choice of shipping it by air or the choice of shipping it by ground. The pickup times are exactly the same. They are picked up at 5 o'clock on day one, and the guaranteed delivery times are the end of the day, the second day, and they are charged $27 for air and $11 for ground. And UPS's position is that anybody looking at this, and Judge Wu's position was anybody looking at this would know that even though it says two-day air, and even though you're paying $27 rather than $11, that anybody would know nonetheless it's actually being put on a truck. Judge Wu applied California law. Yes. Let's talk about that. There's other states involved. Trying to figure out what happened with respect to figuring out which appropriate state law should apply and if there was any conflict of law or choice of law, I'm sorry, choice of law discussion or agreement on how the court would proceed. So UPS moved to dismiss relying on California law. It was their motion, obviously not ours. Judge Wu accepted for purposes of their motion the California law. Did you object? We did not take issue with that, Your Honor. Because? It was their motion. We argued it on the terms that they presented, and we elected not to take issue with the choice of law, in part because on the fundamental question of what the contract called for, we believe that substantively the law doesn't matter as far as the interpretation of the contract. And Judge Wu, when he dismissed the covenant of good faith claims, did so on preemption grounds, so the question of what law applied was never reached in his decision with respect to the covenant of good faith. And so you don't assert that there should have been at this point some choice of law. It sounds like you're okay with what he did in applying California law. I mean, because typically the district judge in this kind of case has to sort it all out and see what, you know, which, how each claim is going to bear out in light of the contract for each State, the contract law in each State, and it's a very methodical sort of, you know, tedious process. But you were okay with kind of skipping over it. I say skipping. It sounds like you both were okay with kind of not having to go through that process and simply basically agreeing that California law would apply. We were okay. Yes. We were okay with it. We were okay with it as a matter of interpreting the contractual provisions that were at issue here, and we were okay with it, obviously, from the standpoint of dealing with the preemption issues, because that wasn't a State law, really a State law-specific issue. I think it's pretty clear what's going to happen, which is if we believe this Court should, if you find that this was, in fact, a contract for air services and that there was a breach of contract, or that that was the contract, and if you find, as I think you should, that the covenant of good faith claims are not preempted in light of Ginsburg, which Ginsburg 2, which I think is clear, if you send the case back for trial, I suspect we're suddenly going to hear UPS say it's the State laws of 50 different States that apply when we get to the question of briefing class certification. So that's why, while we've said, yes, everybody treated it as California law, including UPS and including our side and the district court judge, I've noticed that UPS, when they responded to this Court's inquiry, is introducing the idea that there may be a myriad of different State laws that apply. That's, I think, thinking ahead to the class certification issue. But on the key issues for us, which is whether the plain meaning of this contract was for air delivery, and the fact that they've sold air delivery is the only way they could conceivably be unable to charge three times the price that they charged for ground delivery, where that ground delivery was guaranteed to be delivered at exactly the same time as the second day air. Let me ask you a question about that. I don't want to interrupt you, but I did. You made the statement that anybody could look at, and UPS argues anybody can look at that and see, same pickup time, same delivery time. So if you are a reasonable person and you look at it and you see it, why would you choose air if the delivery time and the cost is much lower for ground? And why doesn't Judge Wu's view have merit here? Because people do choose it over and over and over, despite that, despite this very piece of paper saying right in front of them, one's $27 and one's $11.  And I think the answer is that even though the ground delivery is purportedly guaranteed to arrive at the same time, there are some shippers, some senders, who take the added comfort of putting it on an airplane and believing that with the airplane, the likelihood of its being delivered on time is sufficiently greater that they're willing to pay a 3X premium and they're willing to pay aviation fuel. Because the one thing that ER-2947 really does rule out is the possibility that people are paying the $27 knowing it's going to go on a truck. Because if they know it's going to go on a truck, which is, Judge Wu sort of said everybody assumes it's going to go on a truck. They know it. Everybody assumes it. But when you look at this, you have the two stark choices, the exact same delivery times, and yet people systematically are paying that premium. And the reason has to be that they do believe the likelihood of its arriving on time, notwithstanding the guarantee with respect to ground delivery, is worth an extra $17. But doesn't that mean, then, that they're more interested in the time of delivery than the mode? But it means, then, that they have been systematically overcharged. It means they have been systematically overcharged. Well, how could they be systematically overcharged if it's right there in front of them that says you get the same pickup time, same delivery time. It's three times more expensive to go under airplane. Because why are they making that choice? They're making that choice. They're making that choice either because they are picking something that is truly unnecessary, which goes to the fraud claim and goes to the covenant of good faith claim. It starts to look like the Lazar-Hertz claim. And in that case, Hertz had a contractual right, supposedly, to charge anything that wanted to top off fuel tanks when the customers had not filled their tanks before returning them to the airport. And this court found in that that even if you had a technical contractual right to do it, it was overlaid with a duty of good faith. And they couldn't simply, in their own discretion, charge whatever they wanted. And here, UPS has set up a system holding out to the customers that they are using airplanes. And they are getting customers over and over and over to pay three times as much as they would pay for a truck that gets there at the same time. And it must mean either that there is something the customers want, that they're prepared to pay that extra $16 for, or they're being defrauded, or they are being systematically induced to pay for something that they don't need and that UPS knows they're never going to get. UPS knows from its own internal documents that what it is holding out on this page, 2947, will never happen. They know that they will never put a package going from San Francisco to L.A. for two-day delivery on an airplane. They never do it. They know that in any instance where there's two-day delivery, a thousand miles or less, they will never put it on an airplane. Yet every day of the week, and they update this schedule every day of the week to show the delivery times. Every day of the week, they hold out to customers the opportunity to pay three times as much for the basic airplane. They charge them for aviation fuel. Customers are being induced to buy that based on what UPS is holding out. So either they've entered into a contract with those customers that they've never had any intention of keeping, or they're defrauding. You've run out of time. We'll give you two minutes of rebuttal. All right. Thank you very much. Thank you, Your Honors. Ruth Borenstein on behalf of UPS. May it please the Court, despite the way plaintiffs have argued this case, this is not a consumer protection case. It's not under business practices claims like the California 17-200 statute. The district court repeatedly told the plaintiffs that it sounded like that. But they didn't bring that kind of claim because this is an area that Congress has preempted. And so what they're left with is a case about contract terms. And it's a shipping contract with robust disclosures about each UPS service level and the time and cost for each specific package. UPS has these disclosures precisely so shippers can make the choice that's right for them. So shippers can use the website and toll-free number to find out, to get the information, like my opposing counsel just referred to. What is the advantage to a shipper of choosing the higher rate and paying fuel charges if it's clear it's going to go by ground? Well, shippers often choose time and date-definite services because they have a certainty about them and it's very convenient. If I want to send a package UPS next day air, I take a UPS next day air envelope or a package. I know that package is going to get delivered tomorrow at 1030. If I get a second day air packaging, I know that that's going to go be delivered by the end of the next day, second day. I don't have to go through the exercise of calling the toll-free number or looking it up. I know for certain what my time and date of delivery is. Now, time is money. These are experienced shippers. They're businesses with accounts. They may not want to pay their employees to look up the time and cost and find that out. They may opt for certainty. I mean, they won't know that it's really going by ground. I don't think it matters to them whether it goes by ground. And plaintiffs have never alleged that the actual mode of air transportation or ground transportation matters. So what you're saying is that the labeling or the heading of the contract will mislead a lot of people because they don't want to pay their employees to go look it up. No. Your Honor, with respect, I think that the name of the service is a brand name. You know, Nike sells Air Jordan shoes. They use the term air. It connotes speed. UPS uses the term next day air. You can't read that so literally. You know you need to look at the contract to understand all the terms. But you just said they don't want their employees to waste their time looking at the contract. Well, I think if they don't want to look up the specific delivery parameters for each individual package, because if you look at the contract, and it's very simple, we've laid out on page 10 of our brief the chart of services that makes very clear that what the delivery commitments are for the various services. UPS ground has one to five days. So you know, you know from the get-go that there are some packages by ground that will go the end of the next day, some the end of the second day. And shippers then can make the choice when they're picking which mode to use, which service level to use. They can decide, I'm not even going to look it up. I just like next day air. Or I want to look it up because I want to take the cheapest option and see what I would get from ground. But you can't look at the name and think you're learning everything about the contract. For example you're just learning it's going by air. Well, if it says next day, you have to look at the contract to understand that that's next business day. Even those people who don't want their employees to waste their time looking it up? Well, Your Honor, I think. I didn't make up that argument. Well, what I'm saying is to understand that there are ground packages, you need to look at the rate chart one time and you know that there's one to five days for ground, the chart of services that we have. Shippers are encouraged to call if they want to know the specifics of the time and cost for every package. There are some shippers for whom they might not care and they might not want to take the time to look it up. But it's all knowable. These shippers clearly know it because they attach the time and cost calculations to their complaint. So it's up to the shippers to decide what's most important to them. If they're most concerned about saving money, then they will figure out does the ground commitment of the ground service level one to five days, does that work for them or do they want to take the time to figure out is it one day, two day, three day, four day, five day for this particular package. If they want certainty, they're always going to know, then they can take next day air or next day, second day air and there's other. Well, why do you have to have air in there? Why don't you just say next day, second day, five days? Because I think that the titles are, you know, I could get a pair of Air Jordans and I wouldn't be under the impression I could dunk a basketball. But if I go into UPS and say next day air, implicit in that is that it's going to go by an airplane and it's going to get there. Well, it may be you may consider it implicit. And that's what the argument that they make at page 31 of their brief. They say it's implicit in the name. But if you go to the contract, the mode of transportation clauses, which you inquired about, are very specific that UPS reserves to itself the right to decide the mode of transportation and that the price for the service is going to be the service you selected. And, you know, none of these plaintiffs have ever alleged that it matters to them whether or not it goes on an airplane. What matters is what you're buying is a bundle of features for each service. The next day air, second day air has free packaging. It's the certainty that you don't have to look it up. You know what the delivery commitment is going to be. Whereas ground, you have to take that extra step. A lot of what the plaintiffs argued is that UPS has concealed from shippers somehow that there's this lower cost option to go by UPS ground. But the complaint also alleges that out of the 15 million packages that UPS delivers every day worldwide, 11.5 million are shipped by ground. So shippers are familiar with the ground option, the ground service levels. They know it. They use it. And they have all the information in front of them that they could possibly need to make a decision as to what service level. They have it all there except you say that a lot of them aren't going to want to spend the trouble, the time, having to look all that up. And, therefore, the title, which air I don't consider implicit, that sounds explicit to me. You think that a lot of people are going to buy it on the basis of what you label it, what it's called, what it is. And they won't want to read through the hundreds of pages that they have to and that they're going to buy this on the basis that it's going by air. And you're charging them on the basis that it's going by air. The only thing they're not going to get is going by air. And you know it from the beginning. But what they know with next day air is that they're going to get delivery on the next day by 1030. So that's a major factor of not just certainty but convenience. They want something that's going to be delivered in time for the workday. Somebody has it early in the morning, can use it in the course of the day. Isn't there a next day that's 530? There is a next day saver that they can get. That's another service level. And that's also by air. It has air in the name of the service level. Air's just in the name. It's up in the air. It doesn't mean anything. But you would have to believe in all instances that by calling a product next day air, that every single package is going to fly in an airplane. Yeah. That sounds fairly reasonable. If you're buying next day air, it's reasonable to assume it's going by air. But if you think of the example that Judge McGeo gave, which is the one of the packages that one of the plaintiffs here shipped from Glendale to Los Angeles, it's not reasonable to think that UPS is going to fly that package and take it on a joyride on an airplane. On a helicopter, I assume it would go from Los Angeles to Glendale. I don't know why you want to do it, but I don't understand a lot of decisions people make, particularly if they have to read through hundreds of pages on the Internet or wherever it is. You may be right that it's not a breach of contract, although I certainly would not assume that. But to say that it doesn't lead people to think that it's going by air, that I must say I just can't follow. Well, it may be that you have something else buried in the contract that overrides that and that a proper reading of the contract is that it's not going by air, even though it says it's going by air. Maybe you can win that on that theory of the contract as a whole. But to say that it doesn't say it's going by air, I mean, that loses me. Well, Your Honor, this is a case about contract terms. As I said at the beginning, any issue that this might be misleading or deceptive, this is not a Consumer Protection Act claim. I think you have a better basis for your argument to say that it's just not a violation of California contract law, assuming we're proceeding under California contract law, which I gather you believe we are, or do you think we should return it to the district judge to decide what law applies? I don't think you need to return it to the district court about what law applies here because we, UPS, has shown that they can't state a claim for breach of contract or for breach of the implied covenant, no matter what law applies. Has this been briefed under the law of every State? It's been briefed under California, which in large part because two of the plaintiffs are from California. I don't care what the reason is. Are you saying that for purposes of the case, it proceeds under California law? No, Your Honor, but for purposes of this motion where anything within a claim against a carrier, a breach of contract or a breach of implied covenant, assuming it survives preemption, is circumscribed by the American Airlines v. Wollin's case, which is clear that the only kind of claim that can proceed against a carrier that's related to the carrier's price route or service, and that's not at issue here, they've conceded that, the only claim that can proceed is a routine breach of contract claim with no enlargement or enhancement at all. So to the extent that there was Or a breach of the duty of good faith. Well, it would be assuming that the breach of the duty of good faith is not preempted, it's also circumscribed by Wollin's. Wollin's, many courts have applied Wollin's to say, even though you call something a breach of contract action or it would be the same under implied covenant, if you're going beyond the party's bargain, if you're trying to impose something on them that's not within the four corners of the contract, then even if you call a breach of contract, it can't proceed. So our argument is if there's a stray state law out there that is a contract law that would have some sort of addition from state law or policy that they wanted to add on, Wollin's would forbid it. So we're basically talking about uniform contract law. Let me just ask you, so then you didn't object to the district court applying California law then for purposes of the motion to dismiss, is that correct? That is correct, Your Honor. Let's talk about the covenant of good faith and fair dealing. I guess I'm trying to figure out what your view is with respect to Ginsburg and how do we assess the language in Ginsburg that the ADA does not preempt a contract claim based on the doctrine of good faith and fair dealing? Your Honor, I'm having deja vu because you and I had this exact conversation in the Samika case, which we cited. And I said at the time, I think it's preempted, but we would win on the merits anyway, and that would be maybe a simpler way to decide it. I'm happy to discuss preemption, but I also want to make the point that the plaintiffs have said that by not addressing the merits of the good faith and fair dealing claim until a reply brief, the district courts wouldn't consider it, and they said we've waived it on appeal and you cannot consider it. They cite a Seventh Circuit case for that. The Ninth Circuit law is different. The Ninth Circuit will allow affirmance on any ground that's in the record, and that includes something that was not decided by the district court, even at times when it's deemed waived. If the Court has any question about that, I have a couple of citations I can give you, if that would be helpful. Did you answer the judge's question? Kennedy, the ADA does not preempt state-based common law contract claims such as the implied covenant of good faith and fair dealing. That's what Ginsburg holds. And you're saying what? I'm saying two things. I can argue preemption, but even if you don't go to court But you're not. Okay. So for preemption Is that what that means? The answer is it's not preempted under Ginsburg. I think Ginsburg, which I should note, is the circuit petition is being up in the Supreme Court. It was conferenced a couple of times. I believe it's being held because there's a case next week being argued out of the Ninth Circuit dealing with preemption. But I don't believe that Ginsburg states, makes a statement as extreme that any implied covenant claim would be immune from preemption because we have the prior case of Sanchez, Ninth Circuit case, which affirmed a decision that breach of implied covenant claim was preempted. And the Ginsburg court can, of course, overrule the Sanchez panel. And the prior case of West v. Northwest, which was a case involving implied covenant, that was a case that involved a Federal regulation that specifically said people could bring a damages claim for it was bumping off of an airplane. So we've got the Sanchez case, which did hold in the context of an implied covenant. It said that that claim couldn't proceed and affirmed a preemption ruling. But even if Ginsburg, even if Ginsburg doesn't strictly preempt implied covenant claims because they involve the enforcement of State law, they still circumscribe, just as Wolins did, what a claim can be. You cannot use the implied covenant when it's related to price router service, as this case is, but the Ginsburg case was not. You cannot use it to expand what is in the contract. And just as in the Samica case said, you can't use it to tell a carrier that it can't do what is permitted by terms of the contract. If I could also say in terms of exercise of discretion and the implied covenant You're two minutes over.  Thank you. The Lasarvi-Hertz case that my opponent mentioned was a case that overturned a denial of class cert. It did not reach the merits of what that claim was. But in all events, that was a case with an open contract term about price. And what the Karma case, which they also cite, says when there's discretion that affects someone's rights, you have to exercise it within the standards of good faith and fair dealing. Here, the discretion over mode of transportation doesn't affect the time of delivery. It's taken more than a half minute since you were. Thank you, Your Honor. Okay. Thank you. Okay. We'll give you three minutes. Thank you, Your Honor. UPS's position, with all due respect to my adversaries who I know well, UPS's position is that they're born every minute and that the shipping mode clause gives them free reign to take advantage of those people 350,000 times a day, every day of the year for 15 years. That's not what the law, that's not what the law leads to. She had no answer. Counsel has no answer in their briefs or here for 2947, which is an explicit representation and offer to ship either by air or by ground with exactly the same delivery time and a price three times greater if you choose the air option. That is either a contract whose specificity cannot be overridden by the shipping mode clause or it is a lie. The good faith claims that we asserted below were dismissed solely on the grounds of preemption. And under Ginsburg 2, it is clear that claims both for the ADA was established to deregulate the airlines at the federal level and the preemption provision in the ADA was to make sure that the states themselves did not then step in and become the regulators in this court in Ginsburg and in West versus Northwest and in other decisions has made it clear that the preemption does not preempt claims arising out of burdens that the defendant has taken on themselves, burdens of a contractual nature or the fact that a case might have some tangential relationship to fares, as Ginsburg says, as Ginsburg 2 says is irrelevant. As Ginsburg 2 properly said, if you preempt claims the way Judge Wu preempted this one, then the plaintiffs have no recourse because the Department of Transportation has no ability to enforce and redress claims for breach of contract and claims of bad faith. And if the defendant's position is correct, there's no recourse in the state and they therefore get immunity regardless of how bad and egregious their conduct is. That is not what the law allows. That's not what the law calls for. We believe the contract claim should be reversed and that the court should rule that this is a contract for air services, the language throughout the contract says it. The aviation fuel surcharge, which in some sense is the biggest indignity of all for the court to say, well, if you order air, even though it goes by ground, you should expect to pay for aviation fuel. That's the reasoning on page 7 of the court's July 11th opinion, first full paragraph. That opinion is the only explanation that's offered on the fuel surcharge, and it bears scrutiny because it's very, very hard to reconcile with the contractual language and sense of justice. Even if the contract was not to be reversed, the covenant of faith dismissal has to be under Ginsburg. And I thank the court very much for the time this morning. Thank you, counsel. Thank you both very much. Case just argued will be submitted.
judges: Molloy, Reinhardt, Murguia